Robinson, J.,
dissenting. Whatever other elements may have entered into the act of O’Mara to constitute the crime with which he was charged, the exception brings but one question to this court, and that is: Can the crime of manslaughter be predicated upon an unintentional killing while in the violation of a municipal ordinance? And for the purpose of the question here presented such unintentional killing but for the existence of the ordinance would not have constituted the crime of manslaughter.
The answer to above question depends upon whether the power to define felonies and prescribe punishment therefor is lodged exclusively in the general assembly, or whether it is lodged jointly in the general assembly and in the legislative bodies of the various municipalities of the state.
The legislature defines manslaughter as “Whoever unlawfully kills another, except in the manner prescribed in the next four preceding sections, is guilty of manslaughter.”
For the purposes of the question before this court O’Mara violated only a portion of this statute, to-wit, he killed another; but before he could be con *101 victed of the crime of manslaughter it was necessary that the state should do more than prove that he killed another. It should prove that he killed another unlawfully.
The state sought to supply the necessary element of unlawful killing by the introduction of an ordinance of the city of Cincinnati and proof that he was at the time of the killing acting in violation of that ordinance. To constitute the crime of manslaughter, then, the ordinance and its violation became an essential part of the crime, just as essential as the killing, and the enactment of the legislative body of the city of Cincinnati became as essential in defining a necessary element of the crime of manslaughter as was the enactment of the general assembly of Ohio in defining the other necessary element; and the crime, therefore, was defined not by the general assembly of the state of Ohio but by the general assembly of the state of Ohio plus the legislative body of the city of Cincinnati.
The Constitution of Ohio, Section 1, Article II, provides that “The legislative power of the state shall be vested in a general assembly consisting of a senate and house of representatives.”
This court has repeatedly and consistently held that the legislative power of the state being vested by the constitution in the general assembly cannot be delegated by that body.
As I understand the reasoning of the majority of this court it is that the legislature by the use of the words “Whoever unlmvfully kills another” comprehended all laws, including municipal ordinances. From which it necessarily follows that the legislature adopted as a part of the definition of the crime, *102 not only existing ordinances within the limits of the municipality enacting them, but future ordinances within the same limits, which was necessarily a delegation of legislative power.
It is rather startling in view of the provision of Section 1, Article II of the Constitution, and in view of the consistent holdings of this court to the contrary, that this court should now declare in effect that the legislature has power to delegate legislative power to a municipality to define felonies and to legislate upon subjects affecting the morals, safety and lives of the people of the whole state.
The other reason assigned by the majority of this court for the sustaining of the exception is in effect that Section 3, Article XVIII of the Constitution, authorizes municipalities “to adopt and enforce within their limits such local police * * * regulations as are not in conflict with general laws,” and that by virtue of this provision of the constitution, within the limits of the municipality, the legislative body of each municipality may add to general laws, defining felonies and providing punishment therefor, such additional provisions to operate within the boundaries of the municipality, as the wisdom of the legislative body of each municipality may dictate.
If Section 3, Article XVIII, may be construed as conferring power upon the legislative bodies of municipalities to enlarge the scope of the definition of the crime of manslaughter, within the boundaries of such municipalities, then it must necessarily follow that it confers upon the legislative bodies of municipalities power to enlarge the scope of the definition of every felony which the general assembly has de *103 fined, or may hereafter define; and if the legislative definition of the crime of manslaughter, and the various other felonies defined by the general assembly for the preservation of morals and the protection of the lives, the persons and the property of the people of the whole state, can be construed to come within the provision as to “local police * * * regulations,” why cannot all laws enacted under the police power of the state, which by construction has become all comprehensive, be likewise construed to come within that provision when the venue happens to fall within the limits of a municipality?
For these reasons I overrule the exception, sustain the trial court, and dissent from the judgment of this court.
Jones and Matthias, JJ., concur in this dissenting opinion.